### BANNERMAN v. SANFORD.

(Circuit Court of Appeals, Second Circuit. January 5, 1900.)

1. PATENTS—VALIDITY—PRIOR USE.
    Where A. and B. jointly invented and constructed an operative machine, containing a certain useful combination, A. is precluded, by the prior knowledge and use of such combination by B., from covering it by a patent procured in his own name for a different machine subsequently invented by himself; and it is immaterial by which of the two the combination was actually invented.

2. SAME—MAGAZINE FIREARMS.
    The Roper patent, No. 316,401, for a magazine firearm having an actuating hand-piece beneath the barrel, and connected with a piston-breech, for removing exploded shells and inserting cartridges without taking the gun from the shoulder, held invalid because of prior use.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a decree of the circuit court, Southern district of New York, dismissing bill of complaint (85 Fed. 448) in a suit for infringement of United States letters patent No. 316,401, granted April 21, 1885, to Sylvester H. Roper, for a magazine firearm. The facts sufficiently appear in the opinion.

Chas. G. Coe, for appellant.

Geo. D. Seymour and Chas. R. Ingersoll, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The specification opens with the statement that the—

"Invention consists mainly in the combination, in a magazine firearm, of a piston-breech with an actuating-slide, provided with a hand-piece, arranged

beneath the barrel, and acting as a support therefor, and adapted to be grasped by one hand and reciprocated, in a line parallel with the axial line of the barrel, while the other hand is employed in holding the stock of the gun against the shoulder of the person using it." ` `

In describing the drawings the specification further states that:

"The piston-breech, E, is connected with and operated by the reciprocating slide-bar, F, provided with the handle, F'. This handle, F', not only affords means of reciprocating the slide-bar, F, but also constitutes a means whereby the barrel may be supported. The handle therefore constitutes a support for the barrel."

The brief of counsel for appellant contains an epitome of the testimony of complainant's expert, which sets forth the invention described in the patent with sufficient accuracy, as follows:

"The essence of the Roper invention is a magazine firearm so organized and constructed that the supporting, actuating handle, by reason of its location in front of the receiver, and of its combination and connection with the piston-breech, performs the function of actuator operating the piston-breech to work the action mechanism of the gun, and also, by being at the proper time in exactly the right place to be grasped by the forwardly extended hand of the user, the function of supporting the gun at the moment of firing, thus insuring accuracy of aim and steadiness of fire."

It will not be necessary to give further quotations showing what particular functions the piston-breech discharges, and precisely how, in the device shown in the patent, it brings about, when moved by the connection with the actuating hand, the ejection of the discharged shell, the removal of the new shell from the magazine, transference thereof to the barrel of the gun, and the closing of the parts in readiness for discharge, because, out of the 11 claims of the patent, only 6 are here in controversy, and in those 6 such details are not made elements of the claim. This is apparent from the text of the claims, which read as follows:

"(1) In a magazine firearm, a piston-breech suitably connected to, and in combination with, an actuating sliding handle situated forward of the receiver, and serving as a means for supporting the barrel, and provided with a path of reciprocation in a line parallel with the axial line of the barrel. (2) In a magazine firearm, the combination of a piston-breech, a supporting-handle forward of the receiver, and movable in the direction of the length of the barrel, means connecting the handle and piston-breech, and means whereby the piston-breech will be held in position during firing, substantially as specified. (3) In a magazine firearm, the combination of a piston-breech, a supporting-handle forward of the receiver, and means connecting the piston breech and supporting handle, so that when the supporting-handle is used the piston-breech will be moved in the same direction, substantially as specified. (4) In a magazine firearm, the combination of a piston-breech, a supporting-handle forward of the receiver, movable in the direction of the length of the barrel, and means whereby, when the said supporting-handle is moved back and forth, motion will be transmitted to the piston-breech so as to cause the latter to move back and forth, substantially as specified. (5) In a magazine firearm, the combination, with a barrel and a tubular magazine, of a piston-breech, a device whereby the passage of a cartridge from a point opposite the magazine to a point opposite the barrel will be effected, and a supporting-handle forward of the receiver, adapted to move in the direction of the length of the barrel, to operate the piston-breech, and to operate the device whereby the passage of a cartridge from the magazine to a point opposite the barrel is effected, substantially as specified. * * * (8) In a magazine firearm, the combination, with a barrel and magazine of a piston-breech, a supporting-handle situated forward of the receiver, for reciprocating the piston-breech in the direction of the length of the barrel, and a device operated by the piston-breech, and serving to cause

the passage of a cartridge from a point opposite the magazine to a point opposite the barrel, substantially as specified."

A movable breechblock, which could be opened and closed in order to remove old shells, place new cartridges in position, and close the breech against explosion, was, of course, old in the art; and long before the patent in suit there were in use two well-known varieties of breechblock,—the "piston-breech," the principal mode of motion of which was forward and backward, or in a line parallel with the longitudinal axis of the barrel, and the "swinging-breech," the principal movements of which are sliding or rocking movements in planes which are transverse to the longitudinal axis of the barrel. We concur with the circuit judge that, both forms of breechblock being old, there would be no invention in the mere actuation of a piston-breech by axial movement of the supporting handle, if the art already knew of the actuation of a swinging-breech by axial movement of such handle, although there might be field for improvement in the mechanism by which connection was made between the handle and breech, and in the mechanism by which the breech, when actuated, completed its necessary movements. But in the claims in suit the mechanism by which the breechblock operates is not made an element, and the mechanism for connecting handle with breechblock is referred to only by such phrases as "suitably connected," or "means connecting," "means whereby motion will be transmitted," "handle adapted to move the piston-breech," "handle for reciprocating the piston-breech."

Among the patents set forth in the answer was one to E. M. Spencer and Sylvester H. Roper (the patentee of the patent in suit) for magazine firearms (No. 255,894, dated April 4, 1882). The description of this firearm is clearly set forth in the specifications, as follows:

"It is the object of our invention to provide for the recharging of a magazine-shotgun without requiring the gun to be taken down from the position in which it has been fired. We accomplish this result by means of a forked slide provided with a handle, which is arranged beneath the barrel, in convenient position to be grasped and reciprocated by one hand while the gun is held against the shoulder by the other hand, which grasps the stock. One arm of the forked slide carries at its end a laterally projecting pin, upon which is a friction roller which traverses a cam-groove provided with a spring-tongue or switch-cam in the side of an oscillating breechblock."

Here follows a detailed description of the mechanism by which the handle is connected with the breech, and of the mechanism by which the breechblock performs its functions in removing old shells, supplying new ones, etc. The specification proceeds:

"It will be understood that, while the devices which we employ may be variously modified, the leading feature of our invention—the prime mover of the mechanism by which the desired results are accomplished—is the forked slide provided with a handle forward of the breech, in a convenient position to be grasped by the hand and reciprocated in a path substantially parallel with the barrel, while the other hand grasps the stock and holds the gun against the shoulder in firing position."

The similarity between this statement of invention and that set forth in the patent in suit is most striking. The evidence, however, shows that the firearm of the patent in suit was actually made (Feb-

ruary, 1882) prior to the application for the Spencer and Roper patent, last quoted from. No. 255,894 therefore cannot be availed of, in defense, under the third subdivision of section 4920, Rev. St. U. S., as evidence that the alleged invention of the patent "had been patented or described in some printed publication prior to the patentee's supposed invention or discovery thereof." It appears, however, that in the spring of 1881, a model gun of wood was made by Spencer and Roper in the latter's shop in Boston, and in the summer of 1881 a model gun of metal was made by Spencer at his house in Hartford, —a perfectly successful and operative firearm. In both of these models the invention described in the Spencer and Roper patent is embodied. These guns were put in evidence. As was to be expected from the language of the patents, it is apparent that the invention of the claims above quoted from the patent in suit, namely, the longitudinally moving supporting-arm connected with the breech-block so as to actuate it when the supporting-arm is moved, is fully disclosed in these exhibits, except that in the models the breech-block is a swinging-breech, and in the patent in suit a piston-breech. In the models the magazine lies below the barrel. In the patent in suit it is placed on top,—a wholly immaterial change, which we do not understand that complainant contends to exhibit patentable novelty. Section 4886 provides that any person who has invented any new and useful machine, or any new and useful improvement thereof, not known or used by others in this country, may obtain a patent therefor. Complainant contends that in February, 1882, he invented the useful combination which we find in the Roper gun; but it further appears that the very same combination embodied in the Spencer and Roper gun was known, not only to Roper, but to Spencer, early in the year 1881. Upon the testimony, there can be no suggestion that the combination of the earlier gun was embryonic or inchoate, or rested merely in speculation, or was a mere abandoned experiment. The conception was clothed in a substantial form, demonstrating at once its practical efficacy and utility, and the inventors promptly secured a patent for it. "Prior knowledge and use by a single person is sufficient." Coffin v. Ogden, 18 Wall. 124, 21 L. Ed. 821. With such clear proof of Spencer's prior knowledge and use of the invention which Roper claims under his patent, it would seem that novelty is abundantly negatived. The complainant insists that this was not knowledge and use by another than Roper, because the gun of 1881 was the joint invention of Spencer and Roper; that such knowledge and use by Spencer was not separate and apart from the knowledge and use of Roper; that in the eye of the law, as regards the Spencer and Roper invention, Spencer is Roper, and no other person; and that, therefore, "so far as its availability as a defense to defeat the Roper patent in suit is concerned, the Spencer and Roper invention is no more regarded than if it had been the sole invention of Roper, without co-operation on the part of Spencer." We find such argument hypercritical and unpersuasive. Roper, having, with Spencer, invented and constructed a machine which contains a certain useful combination, thereafter takes out a patent in his own name covering this very combination.

If the prior machine produced by both men, and known to both, does not disentitle Roper to cover such combination in his patent, it would not disentitle Spencer to cover the same combination in a patent to himself; and we would have two joint inventors, each rightfully holding a separate patent for the same invention, which is absurd. The fact of knowledge by Spencer of the concrete embodiment of the combination in the guns of 1881 is in no way dependent upon the other fact that it was his invention, or Roper's, or their joint product, or that of some stranger. Once the combination was successfully embodied in a concrete shape, it declared its own existence to any one skilled in the art who looked at it; and we see no sound reason why Spencer alone should be precluded from acquiring the knowledge which such inspection would convey, merely because he had been jointly instrumental with Roper in producing it. We therefore concur in the conclusion expressed in the circuit court. Decree is affirmed, with costs.